UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| Eric Gravel, <br><br> Plaintiff, <br><br> v. <br><br> City of Winooski et al., <br><br> Defendants. | Civil Action No. 2:23–cv–108 |

**REPORT AND RECOMMENDATION**
(Docs. 4, 29)

Plaintiff Eric Gravel, who is appearing pro se, brings this action alleging that Defendants the City of Winooski and eleven named individuals affiliated with the City used excessive force against him during a traffic stop and arrest on March 23, 2022, and thereafter participated in a conspiracy to deprive him of his constitutional rights. Pending before the Court are Gravel's Application for Preliminary Injunction (Doc. 4) and Motion for Appointment of Legal Counsel (Doc. 29).[1] For the reasons discussed below, I recommend denying both Motions.

**Procedural Background**

On May 26, 2023, Gravel filed the original Complaint in this case in the United States District Court for the Southern District of New York, alleging claims of harassment, false arrest, libel, assault and battery, mail fraud, wire fraud, bank fraud, and conspiracy under 42 U.S.C. § 1983. (Doc. 1 at 1–2.) Included as Defendants in the Complaint were Hearst Television, Inc., the Cities of Winooski and Burlington, the Town of Colchester, and the police departments and elected officials of Winooski, Burlington, and Colchester. (*Id.* at 1.) The Complaint requested

---

[1] Also pending before the Court are Defendants' three Motions to Dismiss (Docs. 30–32), which will be addressed in a separate Report and Recommendation.

damages and "[p]reliminarily and permanently enjoining [D]efendants from further illegal conduct injurious to [Gravel]." (*Id.* at 2.) Gravel does not appear to have served this Complaint on any Defendant. (*See* Doc. 10 at 1, ¶ 7.)

On June 6, 2023, Gravel filed an "Application for Preliminary Injunction," seeking an "IMMEDIATE cessation of [D]efendants' harassment of [him]," and requesting a preliminary injunction, an evidentiary hearing, and a trial on the merits. (Doc. 4 at 1.) The Application for Preliminary Injunction itself contains no facts but cites the original Complaint and Gravel's unsworn Affidavit in support of the Application. (*Id.*) In the Affidavit, Gravel states many factual allegations spanning the period from March 2022 through April 2023, against several police officers associated with the Winooski, Burlington, and Colchester Police Departments, the Winooski City Manager, and the Burlington Police Department. (Doc. 5.) Among his allegations, Gravel claims that a Winooski Police Department Lieutenant "issu[ed] an official criminal no[-]trespass against [Gravel] for ALL [of] Winooski City property," and that the lieutenant "assaulted [Gravel] while issuing the no[-]trespass order by impeding [his] access to city hall and placing his hands on [Gravel's] person." (*Id.* at 4, ¶¶ 54, 56.) The Application and Affidavit do not identify the specific conduct he seeks to enjoin or identify the specific individual or entities whose conduct he seeks to enjoin. (*See* Docs. 4, 5.)

Defendants oppose Gravel's Application for Preliminary Injunction, contending that the Application should be denied as moot because Gravel's subsequent Amended Complaint, which replaced the Complaint, does not include a request for injunctive relief. (Doc. 34.) Alternatively, Defendants argue that the Application should be denied because the requested relief is vague, Gravel has not suffered any irreparable harm, and Gravel is not reasonably likely to succeed on the merits of this case. (*Id.*)

On June 7, 2023, the day after Gravel filed his Application for Preliminary Injunction, the case was transferred from the Southern District of New York to this Court. (*See* Doc. 6.) On July 18, 2023, this Court granted Gravel's request to proceed *in forma pauperis* and ordered that the U.S. Marshals Service effectuate service of process if necessary. (Doc. 9 at 3.)

On December 6, 2023, Gravel filed an Amended Complaint alleging federal claims under the First, Fourth, and Fourteenth Amendments of the United States Constitution, and state-law claims for battery and intentional infliction of emotional distress. (Doc. 13 at 12–14.) Multiple parties named as Defendants in the original Complaint are not named in the Amended Complaint, leaving only the City of Winooski and eleven named individuals affiliated with Winooski as Defendants. (*Id.* at 1, 4–6.) Among other allegations, Gravel claims in the Amended Complaint that Defendants conspired to deprive him of his constitutional rights under 42 U.S.C. § 1983, used excessive force against him during a traffic stop and arrest, harassed and assaulted him, and issued a "No[-]Trespass order" against him "for ALL Winooski City property." (*Id.* at 3.) Gravel further claims that, as a result of "the lengthy history developing between [him], the Winooski police department, and . . . surrounding police departments," he and his fiancé "broke up" and he "was forced to" move out of Chittenden County. (*Id.* at 11.) He also alleges that he experiences "daily and long[-]lasting psychological issues[,] triggering his diagnosed [posttraumatic stress disorder]," as a result of the "trauma" Defendants inflicted on him. (*Id.*) Though the Amended Complaint contains numerous claims against multiple parties and includes many factual allegations regarding Gravel's interactions with Defendants, the Prayer for Relief—in contrast with the relief requested in the original Complaint—does not include a request for injunctive relief. (*See id.* at 14; *compare with* Doc. 1 at 2.)

3

On January 31, 2024, Gravel filed a Motion for Appointment of Legal Counsel,[2] requesting that counsel be appointed to represent him in this case "to help him navigate the complex environment of the court proceedings." (Doc. 29 at 4.) In their response to the Motion, Defendants assert that this case is not complex and does not warrant appointment of counsel for Gravel. (Doc. 36.) Defendants further argue that there is no need to appoint counsel because Gravel's claims "do not carry a likelihood of merit." (*Id.* at 1 (internal quotation marks omitted).)

On February 12, 2024, Defendant the City of Winooski, the official Defendants, and the officer Defendants each filed a separate Motion to Dismiss the Amended Complaint for failure to state a claim upon which relief may be granted. (*See* Docs. 30–32.) Gravel has not filed a response to any of these Motions, and the time for such response has expired.

## Analysis

**I.    Application for Preliminary Injunction**

The record reveals that Gravel has abandoned his request for preliminary injunctive relief. In its Text Order granting Gravel's "Motion to Modify Existing Complaint" (Doc. 11), the Court advised that "an amended pleading ordinarily supersedes the original and renders it of no legal effect." (Text-Only Order, ECF No. 12 (quoting *Hancock v. County of Rensselaer*, 882 F.3d 58, 63 (2d Cir. 2018)).) The Court further instructed in the Text-Only Order that Gravel "may not simply make modifications to his original Complaint[;] [he] must file an

---

[2] Plaintiff titled his Motion "*Ex Parte* Motion for Appointment of Legal Counsel." (Doc. 29 (emphasis added).) Although the Motion was initially filed under seal, on March 1, 2024, the Court issued a Text-Only Order directing the Clerk of Court to unseal the Motion because "Plaintiff has not filed a motion to seal or a motion requesting to file his Motion ex parte, and he has not provided reasons for the Motion or any of its attachments to be sealed from the public docket, or decided without providing Defendants notice and an opportunity to respond." (Text-Only Order, ECF No. 33 (citing Local Rule 5.2; *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 11921 (2d Cir. 2006); *Sardarian v. Fed. Emergency Mgmt. Agency*, No. 3:19-CV-910 (CSH), 2019 WL 5417778, *2–7 (D. Conn. Oct. 23, 2019)).)

Amended Complaint that includes all [his] factual allegations and legal claims for relief in one document." (*Id.*)  Nine days later, Gravel filed his Amended Complaint (Doc. 13), which superseded the original Complaint on that date.  As noted above, in contrast to the original Complaint, the Amended Complaint does not include a claim for injunctive relief, but rather, seeks only "compensatory and punitive damages," as well as legal fees and costs.  (*Id.* at 14.)  Given that the case no longer includes a claim for injunctive relief, Gravel's Application for Preliminary Injunction should be denied as moot.

Even if the Court were to consider Gravel's Application for Preliminary Injunction on the merits, it should be denied.  "A preliminary injunction is an equitable remedy"; issuance of such an injunction is "an act of discretion by the court," reserved for circumstances where the applicant faces a real and immediate threat of irreparable injury.  *Am. Civil Liberties Union v. Clapper*, 804 F.3d 617, 622 (2d Cir. 2015).  "A party seeking a preliminary injunction must generally show a likelihood of success on the merits, a likelihood of irreparable harm in the absence of preliminary relief, that the balance of equities tips in the party's favor, and that an injunction is in the public interest."  *Id.* (citing *Winter v. NRDC*, 555 U.S. 7, 20 (2008)).  Although the alleged violation of a constitutional right "triggers a finding of irreparable harm," *Jolly v. Coughlin*, 76 F.3d 468, 482 (2d Cir. 1996), this finding may issue "only after a plaintiff has shown a likelihood of success on the merits of the constitutional claim," *Brock v. City of New York*, 1:21-cv-11094 (AT) (SDA), 2022 WL 479256, at *4 (S.D.N.Y. Jan. 28, 2022).  Therefore, "when a plaintiff seeks injunctive relief based on an alleged constitutional deprivation, the two prongs of the preliminary injunction threshold merge into one[; and] in order to show irreparable injury, [the] plaintiff must show a likelihood of success on the merits."  *Id.* (internal quotation

5

marks omitted). Gravel has made none of the required showings for preliminary injunctive relief in this case.

First, at this early stage in the case, the Court is unable to assess the likely merit of Gravel's claims. The Court has little evidence before it, consisting only of the factual allegations contained in the Amended Complaint, the facts in the unsworn Affidavit in support of Gravel's Application for Preliminary Injunction, and in the information in the attachments to Defendants' Opposition to Gravel's Application for Preliminary Injunction. Although these documents indicate that the City of Winooski served Gravel with a "Notice Against Trespass" in April 2023, thereby limiting Gravel's free speech and petition rights within the City of Winooski, the Notice appears to have been issued in response to Gravel's own disruptive and threatening conduct. (*See, e.g.*, Doc. 34-1 at 2, ¶ 3 ("I have witnessed or been advised of several incidents of threatening behavior on the part of Eric Gravel[, including] . . . Gravel . . . threatening and harassing employees in the [Winooski] City Clerk's office at [Winooski] City Hall."); *id.* at 3, ¶ 8 ("At the time the Notice Against Trespass was served upon Mr. Gravel, the [Winooski] Police Chief and I perceived Mr. Gravel as a real and genuine threat to the safety of City officials and City employees as well as to members of the public who conduct business on City property.").)

Moreover, according to Winooski City Manager Elaine Wang, Gravel is not a resident of or a voter in the City of Winooski; he has been granted access to Winooski City Hall when necessary; and other alternative means exist for Gravel to address matters of public concern to the City of Winooski. (*Id.* at 4, ¶¶ 11–12.) Furthermore, the subject Notice Against Trespass is apparently no longer in effect, as it was set to expire on April 12, 2024, a year from its issuance. (*See* Doc. 34-3 at 7 (stating Notice Against Trespass "prohibited [Gravel] from entering into any

6

[C]ity[-]owned property for one year"); *id.* at 8 (indicating Notice Against Trespass "shall remain in effect until . . . 4/12/24").)

Second, Gravel has not shown a likelihood of irreparable harm in the absence of preliminary relief. It is unclear what, if any, continuing harm Gravel alleges Defendants are inflicting on him, particularly given that the Notice Against Trespass has now expired and the last allegedly unlawful activity committed by Defendants against Gravel occurred in May 2023.

Third, I do not find that the balance of equities tips in Gravel's favor, or that an injunction would be in the public interest. Rather, as discussed above, the Notice Against Trespass appears to have been issued in an attempt to prevent Gravel's threatening and disruptive behavior in the City of Winooski, and Gravel was nonetheless still able to engage with City officials if needed. The alleged deprivation experienced by Gravel as a result of issuance of the Notice Against Trespass appears to be outweighed by the harm experienced by City of Winooski employees and the general public if Gravel was allowed to continue with his alleged conduct.

Finally, Gravel's request for a preliminary injunction is too vague. The Application states that Gravel seeks "the IMMEDIATE cessation of [D]efendants' harassment of . . . Gravel." (Doc. 4 at 1.) But it is unclear which act or acts of "harassment" Gravel seeks to end, and against which Defendant or Defendants. Under Federal Rule of Civil Procedure 65(d)(1), an injunction must "state its terms specifically" and "describe in reasonable detail—and not referring to the complaint or other document—the act or acts restrained or required." Reading Gravel's Affidavit supporting his Application for Preliminary Injunction liberally, the most recent acts complained of occurred in May 2023, about one year ago. (*See* Doc. 5 at 5, ¶ 65.) Those acts were allegedly committed by the Burlington Police Department (*id.*), which has since been removed as a party in this case (*see* Doc. 13 at 1). Many other acts alleged in the Affidavit

have already occurred, leaving no ongoing conduct to enjoin. In sum, it would be impossible for the Court to fashion an injunction meeting Rule 65's specificity requirements.

For these reasons, I recommend that Gravel's Application for Preliminary Injunction (Doc. 4) be DENIED.

## II. Motion for Appointment of Counsel

I also recommend that Gravel's Motion for Appointment of Counsel (Doc. 29) be DENIED without prejudice to renew. Gravel asserts that he qualifies for the appointment of legal counsel because his case is "very complex" due to the number of Defendants and allegations, and due to the "very serious" nature of the claims made against Defendants. (Doc. 29 at 2, 3.) He further argues that he cannot afford an attorney and his attempts to contact counsel have been futile. (*Id.* at 3.)

It is well settled that "[a] party has no constitutionally guaranteed right to the assistance of counsel in a civil case." *Leftridge v. Conn. State Trooper Officer No. 1283*, 640 F.3d 62, 68 (2d Cir. 2011). Under 28 U.S.C. § 1915(e)(1), however, the court "may request an attorney to represent any person unable to afford counsel." A court's decision to decline an indigent civil plaintiff's request for an attorney "may be reversed only for an abuse of discretion." *Pena v. Choo*, 826 F.2d 168, 168 (2d Cir. 1987) (citing *Hodge v. Police Officers*, 802 F.2d 58, 60 (2d Cir. 1986)).

Courts do not apply a "bright-line rule" in deciding whether to appoint counsel for an indigent civil plaintiff, *Hendricks v. Coughlin*, 114 F.3d 390, 393 (2d Cir. 1997), and civil plaintiffs are not entitled to counsel simply because the court has granted an application to proceed in forma pauperis, *Trust v. Fitzpatrick*, 5:18-CV-0139 (LEK/TWD), 2018 WL 1891308, at *1 (N.D.N.Y. Apr. 19, 2018). "[C]ourts should not grant . . . applications [to appoint counsel]

8

indiscriminately," as "[v]olunteer lawyer time is a precious commodity." *Cooper v. A. Sargenti Co., Inc.*, 877 F.2d 170, 172 (2d Cir. 1989). "Because this resource is available in only limited quantity, every assignment of a volunteer lawyer to an undeserving client deprives society of a volunteer lawyer available for a deserving cause." *Id.* Courts should be careful to avoid allocating volunteer-lawyer time arbitrarily or "on the basis of the aggressiveness and tenacity of the claimant." *Id.*

In determining whether to assign counsel to an indigent civil litigant under § 1915(e)(1), the court first considers "the likelihood of merit of the underlying dispute." *Carmona v. U.S. Bureau of Prisons*, 243 F.3d 629, 632 (2d Cir. 2001) (internal quotation marks omitted). "[E]ven though a claim may not be characterized as frivolous, counsel should not be appointed in a case where the merits of the indigent's claim are thin and his chances of prevailing are therefore poor." *Id.* If the claim is found to be "likely one of substance," the court will then "consider secondary factors such as the factual and legal complexity of the case, the ability of the litigant to navigate the legal minefield unassisted, and any other reason why in the particular case appointment of counsel would more probably lead to a just resolution of the dispute." *Id.* (citing *Hodge*, 802 F.2d at 61–62). Generally, "when a petitioner's claims may fairly be heard on written submissions, the appointment of counsel is not warranted." *Thompson v. Griffin*, 14-CV-01641 (DLI), 2017 WL 11511164, at *1 (E.D.N.Y. Mar. 16, 2017) (internal quotation marks omitted).

At this early stage in the case, Gravel has not demonstrated that his claims are likely of substance. To the contrary, as discussed above, Gravel's Application for Preliminary Injunction is unsupported both factually and legally. Moreover, Defendants have filed three Motions to Dismiss Gravel's Amended Complaint, and Gravel has not filed any opposition. Even if it could

be said that Gravel's claims are likely meritorious, the other factors do not favor appointment of counsel. First, after reviewing the Amended Complaint and other documents filed by Gravel in this action, it is clear that he is able to communicate his claims to the Court. Second, Gravel asserts in his Motion that he has already gathered a great deal of evidence against Defendants on his own, including "emails, home surveillance footage, cell phone footage, officer worn body camera footage, [an] Internal Affairs [I]nvestigation report, and Freedom of Information requests and Response." (Doc. 29 at 3.) Third, although Gravel's Amended Complaint contains many facts, there are only five causes of action, none particularly novel or obscure as to require the appointment of counsel. Finally, it appears that the Amended Complaint can be resolved fairly on the written submissions. Accordingly, the interests of justice do not require the appointment of counsel for Gravel at this time.

## Conclusion

For these reasons, I recommend that Gravel's Application for Preliminary Injunction (Doc. 4) be DENIED, and that Gravel's Motion for Appointment of Legal Counsel (Doc. 29) be DENIED without prejudice to Gravel's right to renew the motion at a later date should it appear that the continued development of the case presents issues sufficiently complex that Gravel lacks the capacity to prosecute his claim on his own.

Dated at Burlington, in the District of Vermont, this 16th day of May 2024.

/s/ Kevin J. Doyle
United States Magistrate Judge

Any party may object to this Report and Recommendation within fourteen days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections that shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); L.R. 72(c). Failure to timely file such objections "operates as a waiver of any further judicial review of the magistrate's decision." *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) (quoting *Small v. Sec'y of Health & Hum. Servs.*, 892 F.2d 15, 16 (2d Cir. 1989)).